Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7230 | **DATE** | July 23, 2002 |
| **CASE TITLE** | Gerald Figgs v Connie Gepner, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]

## Memorandum opinion and order entered.
## Accordingly, defendant's motion for summary judgment is granted.

(11) ☒ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| X | Notices mailed by judge's staff. | | JUL 25 2002 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | U.S. DISTRICT COURT CLERK | | 29 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 02 JUL 24 PM 3:56 | | |
| GDS | courtroom deputy's initials | FILED Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GERALD FIGGS,　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　Plaintiff,　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)　　No.　　00 C 7230
v.　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)　　Judge Robert W. Gettleman
CONNIE GEPNER and HABITAT CORP.,　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　Defendants.　　　　　　　)

## MEMORANDUM OPINION AND ORDER

Plaintiff Gerald Figgs filed a complaint against his former supervisor, Connie Gepner ("Gepner") and former employer, Habitat Corporation ("Habitat"), alleging that defendants discriminated against him during his employment on the basis of his color and race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981 and 42 U.S.C. § 1983. Defendants filed a motion for summary judgment in accordance with Fed.R.Civ.P. 56. For the following reasons, that motion is granted.

## FACTS

On January 4, 2000, plaintiff was hired as a doorman by Habitat to work at Huron Plaza, an apartment building in Chicago, Illinois. During his term of employment, plaintiff and all other doormen were African-American. When he was hired, plaintiff was instructed by Gepner to read the pertinent sections of the Habitat employee manual, a copy of which was kept at the doorman's station of Huron Plaza. The manual contained all established policies of Habitat, including the duties and required appearance of doormen and procedures to be followed when doormen called in sick.

Defendants claim that Habitat's policies directed doormen to page Dave Horstein ("Horstein"), head engineer, five hours before their scheduled shift to call in sick. In support, defendants provide a copy of Habitat's sick call procedure which requires employees to page Horstein five hours prior to the scheduled shift if they cannot come to work.[1] The written policies also include a general policy for doormen which delineates required dress and prohibits telephone use for personal business.[2]

Plaintiff claims the sick call policy he read required him to call the office four hours prior to his scheduled shift. Plaintiff admits that the policy he was aware of required him to speak with a person rather than leaving a voicemail message. Plaintiff does not recall reading the policy in the Habitat employee manual prohibiting personal phone calls.

On February 10, 2000, plaintiff used a company telephone, repeatedly, for personal calls and was verbally reprimanded by Gepner for such use. Plaintiff claims that other doormen used the phone for personal business, without reprimand.

On April 9, 2000, plaintiff did not come to work and failed to contact Gepner or Horstein directly to inform them of his absence. The following day, Gepner issued plaintiff a written

---

[1]The policy specifically states, "The employee must page and speak with Dave Horstein/Chief Engineer, five hours in advance of your scheduled shift. Dave is responsible to authorize your sick day and arrange for coverage . . . . Any time off that has not been ok'ed by Dave, per this procedure will not be authorized or paid."

[2]The policy, in the rules and regulations section, says, "Doormen must appear well groomed and in official full Habitat Company doorman uniform at all times. Full uniform consists of the following: hat, jacket, white shirt, tie, slacks, black socks, black shoes and overcoat/sweater if going outdoors is necessary." It provides further that, "If you are ill you must call the office at least five hours before your shift is to begin." Also, it specifically prohibits personal use of the telephone, "While on duty, do not read, eat, smoke, play a radio or television. The telephone is only to be used for emergencies."

2

Notice of Employee Discipline regarding his absence. The notice stated that plaintiff called and left a message on the office voicemail at 2:22 p.m. prior to missing his 4:00 p.m. shift. Plaintiff signed the notice, acknowledging that he had read the report and had been advised of the action to be taken, and he did not write any comments disputing the notice in the section provided.

On June 3, 2000, plaintiff did not report to work for his scheduled shift, and did not call or contact Horstein. Plaintiff claims he left a message on the office voicemail early that morning. On June 5, 2000, Gepner issued plaintiff another written Notice of Employee Discipline for his failure to call in or come to work two days prior and also for not returning a related phone call from the Habitat manager. Gepner then informed plaintiff that Habitat had a three warning policy, from which suspension would result if plaintiff violated another company policy. Plaintiff signed the June 5, 2000, notice acknowledging that he read it and was advised of the action to be taken. Defendant wrote in the employee comments section of this notice that, "My reasons were medical and extremely personal, also I would like to say that I can not get relieved from my shift at the proper time causing me problems."

On June 10, 2000, Plaintiff did not arrive at Huron Plaza to work his scheduled shift. Plaintiff admits not making contact with a supervisor, but claims that more than five hours before his scheduled shift, he left a message with Alonzo Eddins, another doorman, who was on duty at the time. On June 12, 2000, plaintiff was issued another Notice of Employee Discipline citing him for failing to report to work and for not calling his supervisor.[3] Plaintiff refused to sign this notice but wrote the following comments in the provided section: "This warning and suspension

---

[3] Defendants claim that during the issuance of all three notices plaintiff was informed that his violation was due to not getting in touch with Mr. Horstein. Plaintiff, however, denies being told that he violated the sick call procedure by not paging Mr. Horstein.

3

in my opinion invalid and should be rescinded. I called 9 hours to the doorman and left message. I was ill Saturday." After the issuance of the notice, plaintiff was suspended, without pay, from June 12, 2000, through June 15, 2000, for accumulating his third written, and fourth overall, warning.

Subsequently, plaintiff, a member of the Service Employees International Union ("the Union"), filed a grievance with the Union regarding his suspension. The Union, represented by John Zaras, met with Gepner, but took no further action on plaintiff's behalf.

Plaintiff returned to work after his suspension on June 16, 2000, wearing a blue shirt instead of the white shirt Habitat policy required. In addition, plaintiff came to work the following day wearing one of his personal ties rather than the type provided to him by Habitat. Two days later, Gepner wrote plaintiff a letter informing him that he had violated the Habitat appearance requirements, and instructing him to make all necessary corrections. The letter stated, "Last week on two separate occasions you were not dressed in full Habitat Company uniform. On Friday, June 16th you were wearing a dark blue shirt and on Saturday, June 17th, the tie you were wearing was of your own selection. We ask that you wear the full Habitat Company doorman uniform at all times."

On July 18, 2000, plaintiff faxed Gepner and Habitat his letter of resignation. On the same day, Habitat hired Phillip Sanders, an African-American, to replace plaintiff as a Huron Plaza doorman. Two days later plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") against Gepner and Habitat. After receiving a right to sue letter from the EEOC, plaintiff timely filed the instant suit.

Plaintiff alleges that during his tenure at Huron Plaza he was denied access to the restroom and water fountain in the main office. He claims that other doormen were allowed to enter the office when it was closed to use the restroom and/or water fountain. Plaintiff admits that there were other sources of water within Huron Plaza, and other restrooms available to him, but he asserts that the maintenance employees, who had to come to the doorman's station before he could take a break to use those facilities, were too slow. According to plaintiff, he was denied entry into the office facilities based on a verbal order from Gepner to a maintenance man, Danielo Ortiz ("Ortiz"). Ortiz states in a sworn affidavit that the procedure he followed was not to let anyone into the office after it closed, except for maintenance workers who were there to clean. Plaintiff claims he went to Gepner to address the problems he was having with obtaining access and timely relief by the maintenance crew, but his concerns were not addressed. He claims Gepner spoke to him in a demeaning manner in this meeting, and was not helpful or attentive to his needs. According to plaintiff Gepner told him before he could speak to, "Shut up. Sit down. Don't say anything. This is not a democracy." Plaintiff adds a general complaint that Gepner would stand outside the lobby while plaintiff was working and observe him through the windows to monitor his activity.

## SUMMARY JUDGMENT STANDARD

A movant is entitled to summary judgment under Rule 56 when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Unterreiner v. Volkswagen of America, Inc., 8 F.3d 1206. 1209 (7th Cir. 1993). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth

specific facts showing there is a genuine issue for trial. See Fed.R.Civ.P. 56(e); Becker v. Tenenbaum-Hill Assoc., Inc., 914 F.2d 107, 110 (7th Cir. 1990). The court considers the record as a whole and draws reasonable inferences in the light most favorable to the party opposing the motion. See Fisher v. Transco Services-Milwaukee, Inc., 979 F.2d 1239, 1242 (7th Cir. 1992).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc, 477 U.S. 242, 248 (1986); Stewart v. McGinnis, 5 F.3d 1031, 1033 (7th Cir. 1993). This standard is applied with added rigor in employment discrimination cases, where issues of intent and credibility often dominate. See Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1038 (7th Cir. 1993). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252.

## DISCUSSION

Title VII forbids actions taken based on an individual's race if those actions discriminate against the individual with respect to his "compensation, terms, conditions or privileges of employment." 42 U.S.C. §2000e-2(a)(1). Because plaintiff has offered no direct evidence of racial discrimination in response to this motion,[4] the court focuses on the burden-shifting requirements for Title VII cases set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under the burden-shifting approach, plaintiff must establish a prima facie case by a

---

[4]Plaintiff admitted during his deposition that neither Gepner nor Habitat subjected him to any negative racial comments.

6

preponderance of the evidence. See St. Mary's Honor Ctr. V. Hicks, 509 U.S. 502, 505 (1993). Plaintiff's prima facie case must establish that: (1) he is a member of a protected class; (2) he was meeting his employer's legitimate employment expectations; (3) despite meeting the legitimate expectations of his employer, he suffered an adverse employment action; and (4) similarly situated individuals not in his protected class were treated more favorably. Gordon v. United Airlines, Inc., 246 F.3d 878, 885-86 (7th Cir. 2001).

Plaintiff's success in establishing a prima facie case creates a rebuttable presumption of discrimination, causing the burden to shift to defendants to articulate a legitimate, nondiscriminatory reason for the employment decision. See Anderson v. Baxter Healthcare Corp., 13 F.3d 1120, 1122 (7th Cir. 1994). If defendants are successful, the presumption of discrimination dissolves, and the burden shifts back to plaintiff to prove that defendants' proffered reasons are a pretext for discrimination. Id.

Plaintiff has failed to establish his prima facie case because he cannot show that he was meeting the legitimate expectations of his employer at the time he was suspended without pay.[5] Legitimate expectations are "simply bona fide expectations, for it is no business of a court in a discrimination case to decide whether an employer demands 'too much' of his workers." Coco v. Elmwood Care, Inc., 128 F.3d 1177, 1179 (7th Cir. 1997).

At the time plaintiff was suspended without pay, he had — by his own admission — already violated defendant's policies numerous times. Plaintiff used defendant's telephone to make repeated personal calls despite defendant's policy against doing so. Plaintiff's claim that

---

[5]Plaintiff's suspension without pay is the only action taken against him by defendants that rises to the level of an adverse employment action. See Stutter v. Illinois Department of Corrections and Diane Rockett, 263 F.3d 698, 703 (7th Cir. 2001) ("The adverse action must materially alter the terms and conditions of employment.").

he does not recall reading that rule is wholly irrelevant; claiming not to recall an employment policy does not legitimize its violation or render its enforcement discriminatory. Neither does plaintiff's claim that other doormen violated the rule but were not reprimanded; because plaintiff's coworkers were members of his protected class, even if proven this variation in treatment among them proves only that plaintiff's reprimand was not racially motivated.

Plaintiff also admits that on several occasions he notified Habitat of his absence due to sickness by leaving a message on Habitat's voicemail, which he knew to be a violation of company policy. The undisputed facts further establish that on at least one occasion, plaintiff did not notify Habitat of his impending absence due to sickness until approximately an hour and a half prior to the scheduled start of his shift, which plaintiff also knew to be a violation of company policy. For these reasons, the court concludes that plaintiff has failed to establish that he was meeting his employer's legitimate employee expectations at the time of his suspension. Therefore, the court concludes that plaintiff has failed to establish a prima facie case.

Even if plaintiff could establish a prima facie case for discrimination, he has supplied no evidence that any actions taken against him by defendants were racially motivated. Defendants have established a legitimate reason for the plaintiff's suspension — his repeated violations of company policy. After considering the record as a whole and drawing all reasonable inferences in the light most favorable to plaintiff, the court concludes that no reasonable jury could find that defendant's legitimate reason for suspending plaintiff was a pretext for race discrimination.

## CONCLUSION

Defendant's motion for summary judgment is granted.

**ENTER:** **July 23, 2002**

*[signature]*

**Robert W. Gettleman**
**United States District Judge**